**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ALVIN C., | ) | |
| | ) | |
| Plaintiff, | ) | No. 25-cv-5175 |
| | ) | |
| v. | ) | Magistrate Judge Keri L. Holleb Hotaling |
| | ) | |
| FRANK BISIGNANO, Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Alvin C. [1] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") ("SSA") denying him disability benefits. The parties have filed cross motions for summary judgment. As detailed below, Plaintiff's motion for summary judgment [Dkt. 14] is DENIED and Defendant's motion for summary judgment [Dkt. 15] is GRANTED. The final decision of the Commissioner is affirmed.

1.     **Procedural History**

On August 25, 2022, Plaintiff protectively filed an application for disability and disability insurance benefits, alleging disability beginning July 13, 2022. [Administrative Record ("R.") 10.] The claim was denied initially and on reconsideration. *Id*. On June 25, 2024, after an Administrative Hearing, an Administrative Law Judge ("ALJ") found Plaintiff was not disabled. [R. 10-24.] The Appeals Council denied review on April 14, 2025 [R. 1], rendering the ALJ's June 25, 2024 decision the final decision of the Commissioner. 20 C.F.R. §404.981. On May 9, 2025, Plaintiff filed this action seeking review of the Commissioner's decision. [Dkt. 1.]

---

[1]     In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by his first name and the first initial of his last name.

1

### 2.     The ALJ's Decision

In her June 25, 2024 decision, the ALJ analyzed Plaintiff's claim following the SSA's usual five-step evaluation process to determine whether Plaintiff was disabled. [R. 10-24.] At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. [R. 12.] At Step Two, the ALJ found Plaintiff had the severe impairments of diabetes mellitus, peripheral neuropathy, and lumbar spine degenerative disc disease. *Id*. The ALJ found all other impairments, considered singly and in combination, to be non-severe either because they did not exist for a continuous period of twelve (12) months, were receptive to medication or other treatment, did not require significant medical treatment, caused only mild symptoms, were not alleged as severe, or did not result in continuous functional limitations. *Id*. at 12-13. While typically evaluated at Step Three, the ALJ also analyzed the so-called Paragraph B criteria assessing mental impairments at Step Two and found Plaintiff's mental impairments to be non-severe as Plaintiff had no more than a mild limitation in all functional areas. [R. 14.] At Step Three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App'x 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). [R. 16.]

Before Step Four, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations: no climbing ladders, ropes, and scaffolds, can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and must avoid working with vibrating tools and surfaces. [R. 17.] At Step Four, the ALJ concluded Plaintiff was capable of performing his past relevant work as a phlebotomist (DOT# 079.364-022, SVP 3, light) and phlebotomist/medical assistant (DOT# 079.364-022, SVP 3, light; DOT# 079.362-010, SVP 6, light). [R. 22.] Accordingly, the ALJ found Plaintiff was not disabled from the application date

through the date of the decision. [R. 23.]

### 3. Social Security Regulations and Standard of Review

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. 20 C.F.R. § 404.131; *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017). In disability insurance benefits cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018); *Hess v. O'Malley*, 92 F.4th 671, 676 (7th Cir. 2024); *see also* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citations omitted). Even where "reasonable minds could differ" or an alternative position is also supported by substantial evidence, the ALJ's judgment must be affirmed if supported by substantial evidence. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). This "lax" standard is satisfied when the ALJ "minimally articulate[s] his or her justification for rejecting or accepting specific evidence of a disability." *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008) (internal signals omitted) (citing *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004)). Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and their conclusion." *Hess*, 92 F.4th at 676; *Lincoln v. Bisignano*, No. 24-cv-2668, 2026 WL 1097737, at *2 (7th Cir. 2026). Finally, while reviewing a Commissioner's decision, the Court does not second-guess the ALJ's judgment – the Court may not "substitute [its] own judgment for that of the Commissioner [,] reconsider facts, reweigh the evidence, resolve conflicts in the evidence, or decide questions of credibility." *Fitschen v. Kijakazi*, 86 F.4th 797, 802 (7th Cir. 2023).

3

### 4.     Discussion

Plaintiff contends the ALJ erred by (a) wrongly determining that Plaintiff does not have a severe mental impairment and, thus, improperly failing to factor it into the RFC assessment; (b) undermining Plaintiff's subjective claims by relying upon cherry-picked and flawed inferences; and (c) failing to support her rejection of Plaintiff's treating physician's statement. [Dkt. 14 at 5.] The Court disagrees.

### a.  The ALJ's RFC is Supported by Substantial Evidence

Plaintiff claims the ALJ improperly determined he did not have a severe mental impairment and, thus, failed to factor all of Plaintiff's mental impairments into the RFC assessment by not addressing potential on-task and full-time attendance limitations. The Seventh Circuit has emphasized ALJs "are subject to only the most minimal of articulation requirements." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). The ALJ must simply "provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings[.]" *Id.* at 1054 (internal citations omitted); *see also Elder*, 529 F.3d at 415 ("[W]e must allow that decision to stand so long as the ALJ "'minimally articulate[d]'" his reasons—a very deferential standard that we have, in fact, deemed "lax.""). The ALJ exceeded this "lax" standard and built a logical and accurate bridge between the evidence and the determination that Plaintiff's mental impairments were non-severe. *Hess*, 92 F.4th at 676; *Lincoln*, 2026 WL 1097737, at *2. Accordingly, the ALJ did not include any mental limitations in the RFC.

An impairment is "not severe if it does not significantly limit your physical or mental ability to do basic work." 20 C.F.R. § 404.1522(a). In finding Plaintiff's mental impairments non-severe, the ALJ discussed Plaintiff's medical history from February 2022 through October 2023,

acknowledging Plaintiff's diagnoses of anxiety and depression, the reported impact these impairments have had on Plaintiff's day-to-day life, and the treatment Plaintiff had (or had not) sought for these impairments. [R. 13-16.] However, the ALJ also noted the evidence of record included consistent findings of "normal cognition, normal attention and perception, normal thought content and normal judgment," that Plaintiff was capable of going out alone, interacting with others, and completing his personal care activities within his physical tolerances, and that Plaintiff's anxiety and depression appeared controlled with medication (except for a brief event at the alleged onset date when Plaintiff quit his job after he was accused of improper behavior with a patient). [R. 13-14.] Additionally, while the state agency medical consultants only found Plaintiff to have a mild limitation in maintaining concentration, persistence, and pace, the ALJ found the record actually supported a mild limitation in *all* functional areas as evidenced by Plaintiff's "poor memory at the consultative examination, but overall normal cognition, as well as his limited social interactions, and symptoms of anxiety and depression." [R. 14-15.] Considering this evidence together, the ALJ concluded Plaintiff's mental impairments were non-severe as they cause no more than minimal limitations in Plaintiff's functioning and ability to do basic work activities. *Id*. Consequently, the ALJ did not find the evidence compelled additional limitations in the RFC. *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024) ("[T]he ALJ reasonably determined that [Plaintiff's] mental limitations were mild and did not warrant or require any functional limitations.").

Plaintiff faults the ALJ for considering activities of daily living and the absence of specialized mental health treatment in determining the non-severity of Plaintiff's mental impairments. While there are critical differences in activities of daily living versus activities in a full-time job, an ALJ is permitted to consider several factors, including activities of daily living

and treatment, in evaluating the severity of an impairment. *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012); 20 C.F.R. § 404.1529(c)(3). The ALJ appropriately did so here, considering Plaintiff's allegations of the severity of his symptoms against Plaintiff's ability to shop, cook, clean, go to amusement parks, visit with relatives, walk his dog, drive, and interact with others. [R. 14, 18]. Rather than discounting Plaintiff's mental impairments, the ALJ simply noted Plaintiff's ability to engage in such activities "diminishes the consistency of the claimant's allegations of functional limitations." [R. 18]; 20 C.F.R. § 404.1529(c)(3); *see also Kathleen C. v. Saul*, No. 19-cv-1564, 2020 WL 2219047, at *5 (N.D. Ill. May 7, 2020) ("[I]t is proper for an ALJ to consider a claimant's activities in determining her functional limitations or whether she has exaggerated them."). Similarly, the ALJ appropriately considered Plaintiff's course of treatment, or lack thereof, for mental health care. Despite Plaintiff claiming functional limitations stemming from his mental impairments, the ALJ highlighted that only the June 2023 consultative examination indicated "some impairment in general knowledge, calculations, judgment, and memory" but the record otherwise did not reflect additional treatment or complaints of mental health concerns after this June 2023 exam (outside of a continued prescription for medication that can be used to treat depression, anxiety, or peripheral neuropathy). [R. 13-14]; *Nicholson v. Astrue*, 341 F. App'x 248, 252 (7th Cir. 2009) ("This lack of treatment supports the ALJ's adverse credibility finding."); *Carlon v. Berryhill*, No. 17-cv-50122, 2018 WL 5279168, at *6 (N.D. Ill. Oct. 24, 2018) ("Lack of treatment is a valid and common rationale used to discount a claimant's credibility.").

Plaintiff contends the ALJ failed to consider his impairments, severe and non-severe, in combination, as she failed to assess whether his impairments, in combination, may impede his ability to meet the on-task and attendance requirements of full-time employment. [R. 10-11.] However, it is clear the ALJ did consider Plaintiff's impairments in combination as required under

6

the regulations. 20 C.F.R. § 404.1523(c); 20 C.F.R. § 404.1545(a)(2); 42 U.S.C. 423(d)(2)(B). The ALJ noted she considered Plaintiff's impairments "singly and in combination" several times throughout her decision in ruling that neither Plaintiff's impairments nor his combination of impairments met the requirements of one of the listed impairments. [R. 12, 13, 16.] The ALJ also explicitly stated she considered all of Plaintiff's "medically determinable impairments, including those that are not severe, when assessing the [RFC]." [R. 13.] These statements are sufficient evidence to show the ALJ properly considered Plaintiff's combination of impairments. *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008) (finding the ALJ properly considered Plaintiff's combination of impairments, in part, where the ALJ ruled Plaintiff's "impairments were not severe enough, "either singly or in combination," to equal one of the listed impairments."). Further, Plaintiff only points to his own testimony regarding his pain and his treating physician Dr. Moran's opinion as evidence that the RFC requires greater limitations. [Dkt. 14 at 10.] However, as discussed below, the ALJ found Plaintiff's statements about his pain and symptoms inconsistent with the evidence and Dr. Moran's opinion unpersuasive. [R. 18, 21-22.]

The Court finds the ALJ built an accurate and logical bridge between the evidence and the ALJ's determination that Plaintiff's mental impairments are non-severe. The Court further finds the ALJ's ultimate RFC was supported by substantial evidence.

### b. The ALJ Appropriately Assessed Plaintiff's Subjective Symptoms

Plaintiff next contends the ALJ undermined Plaintiff's subjective claims by relying upon cherry-picked and flawed inferences. [Dkt. 14 at 11-13.] Plaintiff also argues the ALJ ignored evidence which may undermine the ALJ's conclusion of disability. *Id*. Contrary to Plaintiff's position, the Court finds the ALJ properly considered Plaintiff's subjective claims against the

evidence of record and built a logical and accurate bridge for her conclusions.

The Social Security Regulations ("SSR") clearly state "statements about your pain or other symptoms will not alone establish that you are disabled." 20 C.F.R. § 404.1529(a); *see also* 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability[.]"). Rather, when evaluating claims about the intensity and persistence of symptoms, an ALJ is to consider all available evidence, including medical signs, laboratory findings, and medical history and consider whether the alleged limitations and restrictions are consistent with such evidence. 20 C.F.R. § 404.1529(a). As the Seventh Circuit has relatedly held, there "is no presumption of truthfulness for a claimant's subjective claims; rather, an ALJ should rely on medical opinions based on objective observations and not solely on a claimant's subjective assertions." *Knox v. Astrue*, 327 F. App'x 652, 655 (7th Cir. 2009). Additionally, while the ALJ "may not simply disregard a claimant's subjective complaints of pain, he may view discrepancies with the medical record as probative of exaggeration." *Id*.

The ALJ considered Plaintiff's subjective claims and found them inconsistent with both his activities of daily living and with the objective medical evidence of record. [R. 18.] As Plaintiff recognizes, an ALJ "need not address every piece or category of evidence[.]" *Warnell*, 97 F.4th at 1053. In discussing how the ALJ formed her RFC, the ALJ discussed both the evidence that supported Plaintiff's claims (and thus, the limitations the ALJ adopted in the RFC), and the evidence that contradicted Plaintiff's claims (and thus, did not warrant additional limitations). [R. 18-22.] For example, the ALJ flagged, among other evidence, that (1) Plaintiff retained a fairly normal level of daily activity and interaction despite his reported symptoms – he was able to shop for groceries, cook, clean, visit with relatives, walk his dog, and even go to amusement parks; (2) Plaintiff reported improvement with physical therapy; (3) Plaintiff did not bring a cane to one of

his consultative examinations and was observed to be walking without difficulty despite notes that he used a cane at times for his neuropathy; (4) despite his neuropathic pain, Plaintiff was observed to be able to use his hands normally; (5) no significant neurological or visual deficits were included in the record; and (6) Plaintiff reported playing flag football with friends. [R. 19-20.] In support of the ALJ's discussion of inconsistencies, the ALJ also noted Plaintiff's consultative examiner came to the same conclusion that Plaintiff's complaints did "not match up" or "are [out] of proportion to the physical findings." [R. 19.] However, the ALJ did not simply discount Plaintiff's subjective claims. Despite the inconsistencies discussed above and the physical examinations which indicated normal strength and sensation and were otherwise unremarkable except for painful gait, the ALJ limited Plaintiff to "light exertional work with occasional stooping, crouching, crawling, balancing, kneeling, and climbing ramps or stairs and no climbing ladders, ropes, or scaffolds…[and] no work with vibrating tools and surfaces." [R. 19-20.] [2]

In assessing an ALJ's determination, the Court "merely examine[s] whether the ALJ's determination was reasoned and supported." *Elder*, 529 F.3d at 413-414. "[O]nly when the ALJ's determination lacks any explanation or support…will [the Court] declare it to be 'patently wrong[.]'" *Id*. at 413-414. For the reasons discussed above, the Court finds the ALJ's conclusion was reasoned and supported and will not remand on this basis.

### c. The ALJ Properly Assessed Dr. Moran's Medical Opinion

---

[2]    Further, just as an ALJ need not address every piece of evidence, this Court has not addressed every argument or piece of evidence Plaintiff claims the ALJ ignored or mischaracterized. For example, Plaintiff claims the ALJ falsely suggested Plaintiff was non-compliant with his treatment when he decided to stop his diabetes medication and lose weight. [Dkt. 14 at 11-12.] However, it appears the ALJ credited Plaintiff's attempt to lose weight, recognized that Plaintiff's blood glucose remained elevated even after Plaintiff lost 100 pounds, and that Plaintiff then restarted medication for his diabetes. [R. 18-19.] Similarly, Plaintiff takes issue with the ALJ flagging that one treatment note indicated Plaintiff had no hypoglycemia while ignoring the ALJ's comment in the same paragraph that another exhibit evinced overall hyperglycemia (and that Plaintiff's medication was adjusted to account for this). *Id*. Contrary to Plaintiff's attempt at cherry-picking and drawing flawed inferences (the exact conduct he accuses the ALJ of), as discussed throughout this opinion, the Court finds the ALJ adequately reviewed all evidence of record.

Lastly, Plaintiff alleges the ALJ failed to support her rejection of the opinion of Plaintiff's treating physician, Dr. William Moran. [R. 13-15.] In evaluating a medical opinion, an ALJ is required to articulate how persuasive they found the medical opinion and evaluate the supportability and consistency (among other factors) of the opinion with the record. 20 C.F.R. § 404.1520c(b)(2). Supportability refers to "the objective medical evidence and supporting explanations presented by a medical source" to support their opinion. 20 C.F.R. § 404.1520c(c)(1). Consistency refers to the consistency of a "medical opinion(s)…with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). The Court finds the ALJ properly evaluated the persuasiveness of Dr. Moran's opinion.

The ALJ found Dr. Moran's opinion unpersuasive as it was inconsistent with the record and lacked clinical findings supporting the opinion. [R. 21.] Dr. Moran opined Plaintiff had several limitations, including only being able to sit, stand and/or walk for less than two hours in an eight-hour day, needing walking breaks every 15 minutes, needing unscheduled breaks every 30 minutes, limitations in his ability to lift more than 10 pounds, never being able to reach, handle, or finger with bilateral upper extremities, and that Plaintiff would be incapable of even a low stress job due to his anxiety. [R. 21.] The ALJ explained Dr. Moran's opinion appears to be "an overstatement of the claimant's limitations" as these limitations were inconsistent with Plaintiff's physical examinations. *Id*. The ALJ went on to explain inconsistencies with additional evidence of record, including Plaintiff's ability to "open a door using a doorknob, pick up coins, pick up and hold a cup, pick up a pen, tie shoelaces, turn a page, button and unbutton clothing, and oppose his thumb and index finger, at the consultative examination," Plaintiff's unremarkable physical examinations other than painful gait and grossly diminished sensation on occasion, and Plaintiff's

10

improved mobility and strength following physical therapy. *Id*. The ALJ further noted that while Dr. Moran indicated he relied on his own treatment of Plaintiff since 2016 in forming his opinion, the opinion lacked any clinical and/or laboratory findings that corroborated Plaintiff's limitations. *Id*. The ALJ did not impermissibly "play doctor" by highlighting the gaps and weaknesses in Dr. Moran's opinion. Rather, the ALJ did exactly what the regulations required of her.

Plaintiff also claims the ALJ improperly invalidated Dr. Moran's opinion because Dr. Moran's opinion included a finding on an issue reserved to the Commissioner. [R. 14-15.] While the ALJ flagged that Dr. Moran's opinion on Plaintiff's inability to work relates to an issue reserved to the Commissioner,  statements related to this reserved issue were deemed by the ALJ neither valuable nor persuasive. [R. 21.] This is consistent with the guidelines of 20 C.F.R. 404.1520b(c)(3). The ALJ still considered the remainder of Dr. Moran's opinion and explained, in detail, why she found the remainder of the opinion unpersuasive. The Court finds the ALJ properly assessed Dr. Moran's opinion.

### 5.      Conclusion

For the foregoing reasons, the Court declines to remand this matter. Plaintiff's motion for summary judgment [Dkt. 14] is DENIED and Defendant's motion for summary judgment [Dkt. 15] is GRANTED. The final decision of the Commissioner is affirmed.


**ENTERED: June 1, 2026**

Hon. Keri L. Holleb Hotaling,
United States Magistrate Judge


11